RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0075p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ANITA CAGAYAT,

*Plaintiff-Appellant*,

*v.*

UNITED COLLECTION BUREAU, INC.,

*Defendant-Appellee*.

No. 19-3431

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:18-cv-01172—Edmund A. Sargus, Jr., District Judge.

Decided and Filed: March 9, 2020

Before: NORRIS, MOORE, and DONALD, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Geoffrey C. Parker, Jonathan L. Hilton, HILTON PARKER LLC, Pickerington, Ohio, for Appellant. Ethan G. Ostroff, TROUTMAN SANDERS LLP, Virginia Beach, Virginia, for Appellee.

DONALD, J., delivered the opinion of the court in which MOORE, J., joined. NORRIS, J. (pp. 11–12), delivered a separate dissenting opinion.

_____

## OPINION

_____

BERNICE BOUIE DONALD, Circuit Judge. Plaintiff-Appellant Anita Cagayat seeks an order from this Court reversing the district court's dismissal of her claim brought pursuant to 15 U.S.C. § 1692f(8) of the Fair Debt Collection Practices Act and remanding the matter back to

the district court.  The district court dismissed Cagayat's Fair Debt Collection Practices Act allegation for failure to state a plausible claim to relief, reasoning that the exhibits attached to her complaint contradict the factual allegations therein that are central to the claim.  Because we find that the exhibits Cagayat attached to her complaint do not utterly discredit the factual allegations central to her 15 U.S.C. § 1692f(8) claim and because those factual allegations give rise to a plausible violation of § 1692f(8), we reverse the district court's holding and remand the matter for reconsideration in light of this opinion.

I.

In her complaint, Cagayat alleges that Defendant-Appellee United Collection  Bureau, Incorporated ("UCB") sent her two consumer debt collection letters ("the Letters") that "featured a large glassine window, through which a paper page with [Cagayat]'s name and address is visible."  Written on the inward side of the paper page inside the envelopes and allegedly visible through each envelope's glassine window that reveals Cagayat's name and address, are the words "Collection Bureau."  According to Cagayat, "[T]he words 'Collection Bureau' bleed through the paper page and are clearly visible . . . to the naked eye."  She claims that someone looking at the envelopes in normal lighting can clearly read, without unusual strain or effort, the following message: "call our toll-free Consumer Service Hotline at 1-866 . . . United Collection Bureau, Inc. Compliance Department . . . account number on all communications."  Cagayat also submits that her daughter saw the Letters and recognized that a debt collector sent them.  Cagayat attached copies of the Letters to her complaint as exhibits and specified that each was in fact a "copy."

On October 3, 2018, Cagayat filed this suit against UCB, seeking damages for UCB's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and the Ohio Consumer Sales Practices Act ("CSPA"), Ohio Rev. Code §§ 1345.01-.13.  In response to her complaint, UCB moved the district court to dismiss Cagayat's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the allegations do not constitute a violation of § 1692f(8).  The district court granted UCB's motion and dismissed with prejudice Cagayat's FDCPA and CSPA claims.  Cagayat timely appealed the dismissal of her FDCPA claims.

II.

In challenging the district court's dismissal, Cagayat makes three primary arguments: (1) the district court's finding that the exhibits contradicted the factual assertions of Cagayat's pleadings was an improper finding of fact reserved for the jury and an incorrect determination; (2) impermissible language clearly visible from the exterior of an envelope violates 15 U.S.C. § 1692f(8) regardless of it location on the mailing; and (3) the district court improperly applied the "least sophisticated consumer" standard in finding that the contested language cannot be clearly read without unusual strain or effort because the language is upside down and backwards when the envelopes are held right-side up.

This Court "review[s] de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Rule 12(b)(6)." *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 318 (6th Cir. 2017) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). "In doing so, '[w]e construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Id.* at 319 (quoting *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus.*, 648 F.3d 452, 456 (6th Cir. 2011)). To survive a motion to dismiss, a plaintiff's complaint "must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct.]'" *Id.* (quotations omitted) (quoting *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 383 (6th Cir. 2016)).

For the following reasons, we find that the district court erred in granting UCB's motion to dismiss.

III.

The FDCPA is an extraordinarily broad statute, crafted in response to what Congress perceived to be a widespread problem in debt collection practices, and must be construed accordingly. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008); *see also Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448 (6th Cir. 2014). The FDCPA aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e); *see id.* §§ 1692(a)-(d). "To that end, the Act imposes various procedural and substantive obligations on debt collectors." *Sheriff v. Gillie*, 136 S. Ct. 1594, 1598 (2016). The opening language of § 1692f, in conjunction with subsection (8) of that provision, reads as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . . .
>
> **(8)** Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f.

We must determine whether language appearing through a glassine window of an envelope falls within the boundaries of § 1692f(8)'s protection. In *Douglass v. Convergent Outsourcing*, the Third Circuit was faced with whether § 1692f(8)'s prohibition on language and symbols applies to markings visible through a transparent window of an envelope. 765 F.3d 299, 301 (3d Cir. 2014). The court in *Douglass* held that § 1692f(8) indeed prohibits debt collectors from including markings that are visible through a glassine or otherwise transparent window of an envelope that reveal that the contents of a letter pertain to debt collection. *Id.* at 302-06. The court reasoned that, "[l]ike language printed on the envelope itself, language appearing through a

windowed envelope can be seen by anyone handling the mail." *Id.* at 302. The Federal Trade Commission's staff commentary on the FDCPA bolsters this reading of § 1692f(8)—stating that "[a] debt collector may not use a transparent envelope, which reveals language or symbols indicating his debt collection business, because it is the equivalent of putting information on an envelope." Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988); *see also Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 361 (6th Cir. 2012) (finding "instructive" the Federal Trade Commission's staff commentary on the FDCPA). Additionally, a review of district court opinions throughout the nation reveals that courts that have taken up the issue either favor this broad interpretation of § 1692f(8),[1] or at least identify no problem with it.[2]

As the Third Circuit stated in *Douglass*, "we cannot find language exempt from § 1692f(8) if its disclosure on an envelope would run counter to the very reasons Congress enacted the FDCPA." 765 F.3d at 303. Contrary to any contention otherwise, the words "Collection Bureau" signal that the Letters pertain to collection of a debt. That is expressly barred by § 1692f(8). Like the account number in *Douglass*, this type of "disclosure implicates a core concern animating the FDCPA—the invasion of privacy"—and accordingly is not benign. *Douglass*, 765 F.3d at 303. Specifically, this type of disclosure contravenes § 1692f(8)'s purpose of preventing embarrassment resulting from conspicuous language visible on an

---

[1]*Garcia v. Creditors Specialty Serv.*, No. 14-cv-01806-BLF, 2016 U.S. Dist. LEXIS 159686, at *15-16 (N.D. Cal. Nov. 16, 2016) (providing an unreported case from a district court in the Ninth Circuit finding that the plaintiff met her burden with respect to a violation of § 1692f(8) where the contested language and symbol were shown through the glassine window of an envelope); *Adkins v. Fin. Recovery Servs.*, No. 15-cv-887, 2015 U.S. Dist. LEXIS 131884, at *6-9 (N.D. Ill. Sept. 30, 2015) (providing an unreported district court opinion from the Seventh Circuit holding that a plaintiff stated a viable claim under §1692f(8) for the display of her account number through the glassine window of an envelope); *Perez v. Budget Control Servs.*, No. 16-cv-00767-PAB-CBS, 2017 U.S. Dist. LEXIS 30337, at *11 n.4 (D. Colo. Mar. 3, 2017) (providing an unreported opinion from the Tenth Circuit stating that "printing visible through an envelope window is 'on' the envelope for the purposes of Section 1692f(8).").

[2]*DeCraene v. Weber & Olcese, P.L.C.*, 300 F. Supp. 3d 978, 982-83 (W.D. Mich. 2018) (taking no issue with the fact that language was not actually written "on an[] envelope" when analyzing the merits of a § 1692f(8) claim based on language visible through a glassine window); *see Artell v. ARS Nat'l Servs.*, No. 15-22580-CIV-WILLIAMS, 2016 U.S. Dist. LEXIS 154163, at *2, *8-12 (S.D. Fla. Nov. 4, 2016) (providing an unreported district court opinion from the Eleventh Circuit that denies a § 1692f(8) claim involving language and a barcode symbol visible through a windowed envelope, based not on the visibility of the language through glassine window but that the language did not disclose any private affairs or tend to mislead a debtor); *Gardner v. Credit Mgmt. LP*, 140 F. Supp. 3d 317, 322-24 (S.D.N.Y. 2015) (providing a published district court opinion from the Second Circuit denying a § 1692f(8) claim involving language visible through a windowed envelope, without reference to the glassine window, because the language did not disclose any private affairs or tend to mislead a debtor).

envelope that indicates that the contents of the envelope pertain to debt collection. *DeCraene v. Weber & Olcese, P.L.C.*, 300 F. Supp. 3d 978, 981 (W.D. Mich. 2018) (noting proscription of a conspicuous name on an envelope that indicates the contents pertain to debt collection); *see Douglass*, 765 F.3d at 304-05 (noting proscription of marking indicating contents of the letter pertain to debt collection); *Goswami v. Am. Collections Enter.*, 377 F.3d 488, 494 (5th Cir. 2004). In light of the above, we also adopt the position that § 1692f(8) applies to curtail language or symbols showing a communication pertains to collection of a debt that is visible through a glassine window of an envelope.

A.

Cagayat submits that the district court's decision to dismiss her claim based on the copies of the Letters attached as exhibits to her complaint was erroneous. UCB disagrees and submits that the contradiction of the factual allegations in Cagayat's complaint was apparent on the face of the Letters. As an initial matter, a court may consider the complaint and any exhibits attached thereto in determining whether dismissal under Rule 12(b)(6) is proper. *Cates*, 874 F.3d at 534; *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). As both parties agree, if the "pleadings internally contradict verifiable facts central to [a plaintiff's] claims, that makes [the plaintiff's] allegations implausible." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).

Upon review of the factual allegations in Cagayat's pleadings and the exhibits attached thereto, we do not agree with the district court's conclusion that the exhibits sufficiently contradict the factual assertions central to Cagayat's claim. In its order, the district court failed to properly evaluate the factual allegations in this case. Rather than viewing the factual allegations in the complaint in the light most favorable to Cagayat and determining whether the evidence presented in the exhibits contradicts those facts, the district court summarily concluded that the contested language was not "clearly visible" and could not be read "without unusual strain or effort[.]" Under the Rule 12(b)(6) standard, we find the district court's determination inappropriate.

For the exhibits to contradict the pleadings, the exhibits must "utterly discredit" the allegations central to Cagayat's § 1692f(8) claim. *Bailey*, 860 F.3d at 386-87 (holding, when

reviewing an interlocutory appeal of a motion to dismiss, that because a video "utterly discredits" Bailey's version of events and allows the court to ignore the "visible fiction" in the complaint, "Bailey's pleadings internally contradicted verifiable facts central to his claims such that his allegations are implausible"). Thus, the issue in this case is whether the copies of the Letters utterly discredit Cagayat's allegation that the words "Collection Bureau" are clearly visible through the glassine window of the envelope to the naked eye and can be clearly read, without unusual strain or effort, in normal lighting.

The district court found that the contested language is not clearly visible but, "at best— barely legible." The district court also determined that, "applying the least sophisticated consumer standard, a person looking at the envelopes cannot read [the contested language] without unusual strain or effort because those words are printed on the opposite side of the Letters and are upside-down and backwards[.]" We consider each of these determinations below.

The Letters attached as exhibits do not utterly discredit Cagayat's assertion that the language is clearly visible. In her Complaint, Cagayat alleges that the words "Collection Bureau" "bleed through" the paper inside the envelope and are "clearly visible through the glassine window to the naked eye." She further alleges that "[a] person looking at the envelope *in normal lighting* can, without unusual strain or effort, clearly read" the words "Collection Bureau." Critically, Cagayat does not allege that the copies of the Letters accurately demonstrate what the Letters look like in "normal lighting." The district court should have viewed these exhibits with the understanding that there is always some disparity in the quality of a copy versus the actual paper. And even then, the words "Collection Bureau" are at least moderately visible in the copies Cagayat attached, *see* R. 1-3 (Letter Copy at 2) (Page ID #12), particularly in the close-up shot, *see* R. 1-5 (Close-Up Copy at 2) (Page ID #16). Accordingly, contrary to the district court's conclusion that the exhibits show that the contested language is "at best—barely legible[,]" we find that the exhibits show that the contested language is "at worst—barely legible."

At the Rule 12(b)(6) stage, the district court must decide whether, upon review of the complaint and its attached exhibits, there is a reasonable expectation that discovery will reveal

that the contested language is clearly visible.  *See Cates*, 874 F.3d at 534.  We find it is reasonable to conclude that discovery will reveal that the Letters, when viewed in normal lighting, display clearly visible language that indicates that the communications pertain to collection of a debt.  Thus, we disagree with the district court's holding that Cagayat's exhibits contradict her assertion that the words "Collection Bureau" are clearly visible.

The district court also improperly applied the least sophisticated consumer standard in coming to its conclusion.  "Courts use the 'least sophisticated consumer' standard, an objective test, when assessing whether particular conduct violates the FDCPA."  *Weiner*, 539 F.3d at 333 (quoting  *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)).  "This standard recognizes that the FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices."  *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014).  Here, the district court concluded that the contested language cannot be clearly read without unusual strain or effort because it is upside-down and backwards when the Letters are held right-side up.  Cagayat argues that the district court's holding fails to account for § 1692f(8)'s purpose of protecting the least sophisticated consumer from being embarrassed when someone else realizes she received mail from a debt collector.  Contrary to UCB's contention otherwise, we agree.

A person handling or viewing one of the Letters could easily rotate the letter to read the words "Collection Bureau."  If a person grabbed one of the Letters out of the mailbox, he or she could easily grab or turn the letter "upside-down," such that the address itself would appear upside down and backwards while the words "Collection Bureau" would be clearly visible and right-side up.  Thus, the nature of the Letters would be apparent on the face of the envelope to anyone handling the mail.  *Douglass*, 765 F.3d at 302.  Indeed, no outside research, consultation, special knowledge, or significant effort would be required to know the nature of the Letters.  *DeCraene*, 300 F. Supp. 3d at 981-82 (rejecting an attempt to add a research element to the least sophisticated consumer analysis, as it would require courts to look beyond what is "on the

envelope").[3]   Accordingly, the least sophisticated consumer standard does not excuse UCB's conduct here.  To hold otherwise would obstruct "Congress's intent to screen from public view information pertinent to the debt collection." *Douglass*, 765 F.3d at 302.  This decision does not affect what a debt collector can write inside a letter.  All it requires is a simple adjustment, such as lighter ink, thicker writing paper or envelopes, or an extra sheet of paper covering the letter inside.  A contrary decision would permit an end-run around § 1692f(8) by clever envelope, paper, or font selection.  Thus, applying the least sophisticated consumer standard, the fact that the words "Collection Bureau" are upside-down and backwards does not utterly discredit Cagayat's assertion that the language can be clearly read without unusual strain or effort.

B.

We also disagree with the district court's view that barring visible text printed on the Letters would lead to absurd results.  According to UCB and the district court, our holding today would prevent debt collectors from sending collection letters at all.  Cagayat argues that, to the contrary, a *narrow* construction of § 1692f(8) would create absurd results by allowing debt collectors to print whatever they want on the inside of the letter, no matter how obvious from the outside, as long as they do not print it on the envelope.  Under the FDCPA, a business cannot display on an envelope that a specific person owes a debt.  Likewise, a business whose name evidences it is in the debt collection business cannot display its name on the face of an envelope to a debtor, without violating the FDCPA.  The concern in both situations is the same— protecting the debtor against embarrassment resulting from their association with debt collection efforts, *i.e.*, protecting against an invasion of privacy.  Hence, we do not find that we can disregard a business name that shows on the face of a debt collection letter, like UCB's, merely because it is written on the inward contents of a letter.  Moreover, with the extraordinary breadth of the FDCPA in mind, we find that this understanding best promotes the elimination of abusive debt collection practices without causing a competitive disadvantage to debt collectors that refrain from using such practices.

---

[3]The Third Circuit takes a broader approach and holds that a violation of the FDCPA can still occur where limited research or inquiry into information on the face of an envelope reveals the communication relates to debt collection, a view that provides even greater support for our conclusion here. *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 282 (3d Cir. 2019).

In conclusion, we do not find that the Letters attached to the complaint as exhibits utterly discredit Cagayat's assertion that someone looking at the envelope in normal lighting could clearly read the words "Collection Bureau" through the glassine window without unusual strain or effort.

### C.

As to Cagayat's state law claim and UCB's contention that the pleadings for the related claim are insufficient, we hold that because the lower court dismissed Cagayat's Ohio CSPA claim for failure to state a claim under the FDCPA, our FDCPA analysis applies equally to her CSPA claim for remand purposes. *See Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 613-14 (6th Cir. 2009) (reversing dismissal of CSPA claims because the district court's dismissal of the claim was based on its determination that the plaintiff did not state a claim under the FDCPA, which was reversed on appeal).

### IV.

Because the exhibits Cagayat attached to her complaint do not utterly discredit the factual allegations central to her 15 U.S.C. § 1692f(8) claim and because those factual allegations give rise to a plausible violation of § 1692f(8), the district court erred in granting UCB's motion to dismiss.

We **REVERSE** the judgment of the district court and **REMAND** for proceedings consistent with this opinion.

------------------

**DISSENT**

------------------

ALAN E. NORRIS, Circuit Judge, dissenting. As the Majority properly recognizes, the FDCPA is a remedial statute and, as such, must be construed broadly. *See Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448 (6th Cir. 2014). Congress enacted it "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). However, even remedial statutes have an outer limit. The FDCPA, and specifically § 1692f(8), "should not be read to create absurd results." *Cagayat v. United Collection Bureau*, No. 2:18-CV-1172, 2019 WL 1934602, at *3 (S.D. Ohio May 1, 2019) (citing *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 306 n.9 (3d Cir. 2014)).

The district court concluded that the mailings attached to the complaint did not run afoul of § 1692f(8). To conclude otherwise would produce precisely the kind of "absurd result" that the Third Circuit feared could occur if the statutory section's language were stretched too far. *Id.* I agree with the reasoning of the district court and therefore I respectfully dissent.

There is no dispute that the appearance of defendant's company name on the envelopes mailed to plaintiff would violate § 1692f(8), which prohibits "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business." In this case, the name United Collection Bureau obviously indicates that defendant is a debt collector. Moreover, it has been established that written language that is visible through the glassine window of a business envelope falls within the scope of § 1692f(8). *Douglass*, 765 F.3d at 302. However, the name United Collection Bureau neither appeared on the envelope nor through the glassine window. According to the complaint, the words "Collection Bureau" bled through the paper and were visible to the naked eye. Complaint at ¶ 12. The district court considered this argument before dismissing it in the following terms:

> [T]he language that Cagayat claims violated the FDCPA was not conspicuously marked on the outside of the envelopes. Instead, the words "Collection Bureau" were printed on the inside portion of the letter, which is necessary for UCB to collect debt. *See Gardner v. Credit Mgmt., LP*, 140 F. Supp. 3d 317, 321 (S.D. N.Y. 2015) (noting that a literal application of § 1692f(8) may "yield the absurd result that a statute governing the manner in which the mails may be used for debt collection might in fact preclude the use of the mails altogether."). In conclusion, such a technical interpretation of § 1692f(8) would yield a "bizarre and idiosyncratic result." *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 507 (6th Cir. 2007).

*Cagayat*, 2019 WL 1934602, at *3. I agree wholeheartedly with this commonsense reasoning. Even if we construe the FDCPA broadly, in my view its language cannot be construed to include a situation where words printed on the back of a page and contained inside an envelope constitute the kind of abusive debt collection practice envisioned by Congress.

I would affirm the judgment of the district court and adopt its reasoning.